## ABRAHAM BLOCK *against* JA's H. WALKER.

### ERROR *to Hempstead Circuit Court.*

Under the territorial statute of assignments, an assignment was an agreement or contract in writing entered into between the assignee and assignor for a valuable consideration; and was equivalent to drawing a new bill in favor of the assignee on the original obligor.

After assignment and delivery, the assignee stood in precisely the same relation to the obligor, as the payee of a bill to the drawee, and thereby acquired the right of action, and was fully authorized to commence and prosecute suit on the bond in his own name.

After assignment once made, or become complete, the assignor had no power to release the debt, or any part of it.

The assignment being a contract, entered into by mutual consent of two persons, cannot, when properly executed, be revoked or dissolved, except by the like mutual consent of both. The contract cannot be cancelled, nor their respective rights seriously altered or destroyed, unless both parties agree to their alteration or destruction; and even then, that agreement must be made and evidenced according to the grade and dignity of the contract.

The assignor had no right to strike out and erase the assignment, after he had once executed it, and by delivery it became complete. He would have no right to alter or change the contract or assignment to the prejudice of the assignee or obligor, without their consent or agreement.

Nor can the assignee, after assignment in full and delivery to him, restore the legal interest in the bond to the assignor by the erasure or cancellation of the assignment. He may destroy the evidence of his own claim, but that will not re-instate the legal and equitable interest in the assignor, without any agreement, re-assignment, or re-delivery.

Where, therefore, to debt on bond, brought by A. for the use of B., the defendant pleaded, that before the commencement of the suit, A. made over, transferred, endorsed, and assigned the bond to B., and delivered the bond, so endorsed, to him, and thereby parted with and transferred all his right, title, and interest, of, in, and to the bond to B.; and defendant thereby came liable to pay to B., and that A. has no interest whatever in the suit, is a good plea in bar.

And a replication, that after the endorsement, B. caused the transfer and endorsement to be stricken out and erased, whereby the legal interest in the bond again vested in A., and A. became entitled to sue, is not good.

This was an action of debt, commenced by James H. Walker, for the use of Nicholas T. Perkins, against Abraham Block and William Simms, on a common money bond. The defendant, Block, pleaded that after the making of the bond, and before the commencement of the suit, to wit, &c., Walker made over, transferred, endorsed, and assigned all his right, title, claim, and interest, of, in, and to the bond, to Perkins, and delivered him the bond so endorsed, and by the endorsement and delivery directed the amount to be paid to Perkins; whereby he, Walker, parted with and transferred all his right, title, and interest, in and to the bond, to Perkins, and the defendant became

Abraham Block *against* Ja's H. Walker.

liable to pay to Perkins, and that Walker has no interest whatever in the suit.

To this plea the plaintiff replied, that after the transfer and assignment, Perkins caused said transfer and assignment to be stricken out and erased from the bond, by means whereof the legal interest in the bond was again vested in Walker, and Walker became entitled to sue.

To this replication the defendant, Block, demurred, and his demurrer being overruled, the plaintiff had judgment final against Block upon the demurrer, and Block sued his writ of error.

TRAPNALL & COCKE, for the plaintiff in error:

By the assignment, the legal interest in the note emanated from the assignor, and vested in the assignee, and afterwards the assignment becomes inoperative, and is important only as evidence of the transfer, and if lost may be supplied by parol. The only means by which the legal interest in an obligation can be transferred by the payee or obligee to any other person, is by an assignment under the statute; and after the assignment, all the right, title, and interest, of the payee is vested in the assignee. That interest can be re-conveyed by no other means; and, therefore, if the assignment is lost or obliterated, the written evidence of transfer may be destroyed, but the legal interest remains in the assignee, until assigned away by him; and, therefore, the replication was no sufficient answer to the plea, and the demurrer should have been sustained.

SCOTT, *contra:*

There is but one question for the court in this case, whether the striking out the transfer by Perkins re-vested the legal interest in said writing in Walker? Of this there can be no doubt. If a person who has endorsed a bill comes into possession of it again, he will be regarded as the bona fide holder and proprietor of the bill, and is entitled to recover, notwithstanding there may be on it one or more endorsements in full, subsequent to the one to him, without producing any receipt or endorsement back from either such endorsors, whose names he may strike from the bill at pleasure. *Bank of Utica* vs. *Smith,* 18 J. R. 230. If, then, the assignor could strike out his own

assignment, so as to re-vest the legal title in himself, how much stronger is this case, when the striking out was by the assignee. In him was the legal right, and it was optional with him to have transferred that right, by endorsement, to a third person, or, by cancelling the assignment to himself, restore the note or writing to Walker; 15 *J. R.* 247, *Burdick* vs. *Green*, where it is decided that the legal title of an endorsee to a note may be divested, either by cancelling the endorsement, or by endorsing it again. If, then, the legal interest in the writing in controversy, was by the act of Perkins restored to Walker, it will not pretend to be argued that he could not bring this suit for the benefit of Perkins. Upon this head I need cite no authority—the books, both in England and this country, abound with similar cases. It has even been decided in New-York, that plaintiff may answer the plea of transfer, by stating that the suit was instituted for the benefit of assignee; 11 *Wendell* 27. The facts necessary to support this argument will be found in the replication, and are admitted by the demurrer. If I have not grossly mistaken the law and decisions on this subject, the court must affirm the judgment of the court below, giving to Walker the usual damages allowed by law, for the delay and trouble occasioned by this appeal.

In addition to the above, I would refer the court to 1st *Sumner* 478, *Riquet* vs. *Curtis; Dugan* vs. *the U. S.,* 3d *Wheaton* 172.

LACY, *Judge,* delivered the opinion of the Court:

The demurrer to the replication raises the only question presented by the assignment of errors, which is, was the legal interest in the writing obligatory, at the time of the institution of the suit, vested in the plaintiff in the action? The decision of this question involves the construction of our statute of assignments, and such general legal principles as are applicable to the case.

Anciently, at common law, *choses in action* were not assignable. They were first made so as respects foreign bills of exchange by the law merchant, and the payee not only had the right of transferring the legal as well as the equitable interest in such instruments by endorsement, but the endorsee was fully authorized to commence and prosecute the suit in his own name. Subsequently, by the statutes of

9th and 10th William III., and 3d and 4th Anne, inland bills of exchange and promissory notes were put on the same footing as foreign bills of exchange, and the law merchant declared to be applicable to them. The principles first introduced and established by the law merchant in regard to foreign bills of exchange, and afterwards extended and recognized by the acts above referred to, in relation to inland bills and promissory notes, doubtless give rise to most, if not to all the statutes of assignments of our own country. Our statute on the subject is very similar to that of Virginia and Kentucky, and is unlike the statute of Anne in every respect, except so far as it makes the legal as well as the equitable interest assignable, and authorizes the assignee to bring suit in his own name. In order that we may see its bearing on the question now before us, it is necessary to insert the act itself, and also such parts of the plea and replication, as necessarily fall within its provisions.

The statute declares, that all bonds, bills, and promissory notes, for money or property, shall be assignable, and the assignee may sue for them, in the same manner as the original holder thereof could do; and it shall and may be lawful for the person to whom said bonds, bills, or notes, are assignable, made over and endorsed, in his own name to commence and prosecute his action at law, for the recovery of the money mentioned in such bonds, bills, or notes, or so much thereof as shall appear to be due at the time of such assignment, in like manner as the person to whom the same was made payable might or could have done; and it shall not be in the power of the assignor, after assignment made as aforesaid, to release any part of the debt or sum really due by said bonds, bills, or notes, provided nothing in this section shall be so construed, as to change the nature of the defence in law that any defendant may have against the assignee, or the original assignor."

The plea alleges, that after the making of the said writing obligatory in the said declaration mentioned, and before the commencement of this suit, to wit: On the 26th day of December, A. D. 1839, in the county of Hempstead, as aforesaid, the said James H. Walker made over, transferred, endorsed, and assigned, all his right, title, claim, and interest to a certain Nicholas T. Perkins, by description of

N. T. Perkins, agent of D. Jeffries, guardian, &c., and then and there delivered the said writing obligatory, so endorsed and assigned, as aforesaid, to the said Nicholas T. Perkins. The defendant relies on these facts, in bar to the plaintiff's right of action, and the plea, after setting up our statute of assignments, as constituting a valid defence, concludes with a verification. The replication admits the facts as pleaded, but alleges new matter by way of avoidance; averring that the said Nicholas T. Perkins caused the said transfer and assignment to be stricken out and erased from said writing obligatory, by means of which said striking out and erasure of said transfer and endorsement by the said Nicholas T. Perkins, the legal interest in said writing obligatory was again reinstated in him, the said plaintiff, all of which he is ready to verify; and then it prays judgment for his debt, damages, and costs.

The demurrer to the replication in this case, raises the question, in whom was the legal interest vested at the time of the institution of this suit? The inquiry, then, is, did the erasure or cancellation by the assignee of the assignment from the writing obligatory, without delivery or a re-assignment to the assignor, vest in him the legal interest, and thereby authorize him to institute the suit in his own name? In examining this question, it should be borne in mind that the replication does not aver, that the assignor or obligor agreed to the erasure of the endorsement, or, that after the assignment was stricken out, that the writing obligatory was delivered or assigned to the original assignor. It merely alleges that the assignee caused the transfer and endorsement to be stricken out and erased from the writing obligatory, and by means of the striking out and erasure therefrom, the legal interest was again reinstated in the assignor. The truth or falsehood of this proposition we will now proceed to test; and in order to arrive at a correct conclusion on the subject, we shall have to analyze and determine the nature and character of assignable instruments, as fixed and ascertained by our statute. An assignment, then, according to our statute, is an agreement or contract in writing, entered into between the assignor and assignee, for a valuable consideration, is equivalent to drawing a new bill, in favor of the assignee, on the original obligor; and the assignee stands precisely in the same relation

Abraham Block *against* Ja's II. Walker.

to the obligor after assignment, as the assignor did before the transfer was made, the legal as well as equitable interest passed by assignment and delivery, and the assignee acquires the right of action thereby, and is fully authorized to commence and prosecute the suit in his own name. After the assignment is once made, or becomes completed, the assignor has no power to release the debt, or any part thereof. The latter clause of the section declares that " nothing shall be so construed in the statute, as to change the nature of the defence in law, that any defendant may have against the assignee or the original obligor." The statute is express and peremptory on these points, and it leaves no room for doubt or construction in regard to them. The assignment in the case now under consideration, is alleged in the plea to have been filled up before the commencement of the suit with the name of the assignee as well as the assignor's, and that by delivery, the writing obligatory was then passed into the hands of the assignee. This being the case, he necessarily, by the statute, possessed the right of action, and was entitled to the custody and safe-keeping of the writing obligatory, at the time the assignment was executed. The question then recurs, has he, since that time, rightly divested himself of these interests, and transferred them in a lawful manner to the assignor.

Admitting the assignment to be a contract, and that it is there can be no doubt, for all the authorities are full and conclusive on the point, the question is then, in what manner can the assignment be lawfully changed, cancelled, or revoked? See *Chitty on Bills,* 236, *Lamber* vs. *Oakes, Holt* 117 ; *Ballingalls* vs. *Gloster,* 3 *East* 483, *Starey* vs. *Barnes,* 7 *East,* 435. A contract is a mutual agreement of two or more, founded on a good or valuable consideration to do, or not to do, any particular thing. The agreement of two or more, competent to contract, being indispensably necessary to the formation of a valid contract, so it requires, likewise, their consent, when a contract is once properly executed, to revoke or dissolve it. In other words, the rights and obligations of each party to a contract being mutual and reciprocal, according to the terms and legal effect of their agreement, these respective rights and obligations can neither be seriously altered or destroyed, unless the party to whom they legally belong

shall agree to their alteration or destruction, and even in such a case, his agreement must properly be given, according to the grade and dignity of the contract.

These principles, it is believed, are fully warranted and sustained by all the authorities on the subject, and are every way consonant to reason and justice. The application of these plain and familiar principles to the question now before the court, will determine the rights and obligations of the respective parties, as fixed by the contract of assignment. It certainly cannot be contended that the assignor has a right to strike out and erase the assignment, after he has once executed it, and the delivery thereof becomes complete. After the assignment, he has no longer any control or power over the contract, because, by the assignment and delivery of the writing obligatory, all his interest is vested in the assignee, and he alone has the right of action in his own name; and the assignor cannot release any part of the debt due upon the bond, nor can he do any act that will change the nature of the defence that the obligor may have at law against himself, or against the assignee. Upon these points the Act is express and peremptory, and to allow him to do any thing injuriously affecting either the rights of the assignee or of the obligor, would be to permit him expressly to violate the provisions and intention of the statute. Independently of this, he would have no right or authority to alter or change the contract or assignment to the prejudice of the assignee or obligor, without their consent or agreement. These *rights*, whatever they may be, are vested by the assignment, and pass by the delivery of the writing obligatory, upon which the assignment is made, and being vested in them by the statute, they cannot be divested of them without an express and implied assignment on their part. It is then clearly manifest, that the assignor has no right to make any change or alteration in the contract whatever, so as to weaken or destroy the rights of the assignee or of the obligor. Neither has the obligor any right or authority to erase or strike out the assignment.— All the interest, both legal and equitable, is vested by the assignment in the assignee, and surely that interest or evidence, upon which it is founded, cannot be cancelled or obliterated without his consent. The only interest that the obligor has in the contract, is the guarantee that

the nature of his defence at law, both against the assignee and assign-
or, shall not be changed. This the statute in express terms secures
to him, and the law will not even allow any agreement between the
assignee and assignor, materially to weaken or impair this guarantee.
That these positions are true in relation to the assignor and the obligor,
cannot be doubted, for the statute imposes the obligations above re-
ferred to upon them, and they are bound by its provisions.

We will now see what right the assignee has to strike out and erase
the endorsement, without the consent or permission of the other parties
to the contract.

There is a mutuality of obligation subsisting between the as-
signee, and assignor, and the obligor of the bond. Neither party
can do any thing forbidden by the statute, or in violation of these
contracts. If the assignment and delivery of the writing obliga-
tory pass the legal as well as the equitable interest to the assignee,
and that it does no one can deny, then how can that interest be again
reinstated in him, without a subsequent assignment and delivery of
the bond?

In this case, the plea shows that the endorsement was filled up be-
fore the commencement of the suit, and that the delivery of the bond
was complete, all of which the replication admits to be true; and the
doctrine is, " after an endorsement is full, the endorser can only transfer
his interest in the bill or note by his own endorsement in writing."
See Chitty on Bills, 253. An endorsement in full, says Chitty, con-
tains in itself a complete regular and legal transfer of the interest in
the bill to the person named in the endorsement; and even if the in-
strument should afterwards be left in the possession of the endorser,
that would not invalidate the transfer. And, therefore, the allegation
in the pleading, that a person endorsed a bill to another, sufficiently
imports a transfer of the entire legal and beneficial interest, without
any allegation of delivery. *Churchill* vs. *Gardner* 7 **T. R.** 596;
*Smith* vs. *McClure,* 5 *East* 477. An endorsement of a bill once com-
plete, by delivery over to the endorsee for value, is not revocable
without his consent. " An endorsement, like an acceptance, may,
before it has been delivered over to a bona fide holder, be revoked,
afterwards it cannot, without his consent, and a re-assignment. *Cox*

Abraham Block *against* Ja's H. Walker.

vs. *Troy* 5 B & A 474. It will be perceived that these principles are strictly applicable to bills of exchange, and if they are true in regard to them, they certainly will hold good as to assignable insruments under our statute, which do not vest by an endorsement in blank and delivery, but by being transferred, endorsed, and assigned over to the assignee. But it is contended that the endorser has come to the possession of the writing obligatory, and therefore he has a right to erase the endorsement, and re-invest the legal interest in himself. This, the court are not prepared to admit, for the record does not show he is in the lawful possession of the writing obligatory. The legal presumption is otherwise, for as the suit is brought for the use of the assignee, he is supposed to be in possession of the instrument. Besides, the replication admits such a state of fact as clearly prove that the legal interest at the time of the institution of the suit, was not vested in the assignor, and of course he was not the lawful holder or proprietor of the bond.

How, then, can it be said, that the assignee can restore the legal interest in the assignor, by the erasure or cancellation of the assignment? He may destroy the evidence of his own claim, but will that reinstate the legal and equitable interest in the assignor, without any agreement, re-assignment, or re-delivery? If that be the case, the the party of his own accord can not only destroy the mutual obligation of a subsisting contract, but he can at the same time create another, and that, too, without the agreement or consent of the other parties, and in prejudice of their rights. Such a proposition is surely as illegal as it is unjust, and can never receive countenance or support in any legal tribunal.

Again, what right or authority has the assignee, without the permission or consent of the obligor, to change the nature of his defence at law? None at all. This, the statute expressly forbids. The moment the assignment is made, the obligor's rights attach, and they certainly cannot be prejudiced or injured against his will.— Neither can his defence at law be so embarassed or encumbered, as to make it less valuable or availing to him on the trial.

If this view of the question be correct, and that it is we have no doubt, then the legal interest at the time of the institution of the

Abraham Block *against* Ja's H. Walker.

suit, was not vested in the assignor, and of course he has no right of action.

The decision of the court below, in overruling the demurrer, and giving judgment for the plaintiff, was therefore undoubtedly erroneous, and must be reversed with costs, and the cause remanded, to be proceeded in agreeably to the opinion here delivered.