## CAMACK, use, &c. vs. BISQUAY, Adm'r.

1. The bankrupt act of 1841 clothes the assignee with all the right, title, and powers in and over the assets, that the bankrupt possessed before his bankruptcy, but nothing more. It was not its design or intention to enable him to convey a legal title, where, by the rules of law, the bankrupt could not have done so.

2. A sale, therefore, by the assignee, of a chose in action, does not divest him of the legal title, and authorise the purchaser to sue in his own name.

Error to the County Court of Mobile.

Stewart, for the plaintiff.

Phillips, for the defendant.

DARGAN, C. J.—This was an action of assumpsit, brought in the name of the plaintiff in error, as assignee in bankruptcy of Khon, Doran & Co., for the use of Durand & Uzaran. Upon the trial it appeared that the defendant's intestate, who resided in Alabama, was indebted to Khon, Doran & Co., who were merchants of New Orleans, for goods sold. Khon, Doran & Co. were duly declared bankrupts by the District Court of the United States for the District of Louisiana, and the plaintiff was appointed their assignee. The debt had been sold by assignee under the order of the District Court, and was purchased by Durand & Uzaran. Upon this evidence the court instructed the jury that the sale of the debt by the plaintiff, in conformity with the order of the District Court, and the purchase of it by the parties, for whose use this suit is brought, divested the plaintiff of the legal title and he could not recover.

A decree of bankruptcy rendered in conformity with the act of Congress of the 19th August 1841, divests the bankrupt of all right to property, whether in possession or in action, or whether his title thereto be legal or equitable, and his assignee becomes invested by his appointment with the title of the bankrupt to all his effects, and he can maintain any suit in law, or in equity, for the recovery of any property or debt belonging or due to the bankrupt, that the bankrupt himself could have done. It is contended that, as the bankrupt act authorises the assignee to sell

all the assets or effects of the bankrupt, whether they be property in possession or mere rights of action, out of this authority to sell grows the right of the purchaser to sell for a debt assigned to him by the assignee, in his own name, notwithstanding such debt be not assignable by the rules of the common law. The third section of the act, after declaring that the decree in bankruptcy shall divest the bankrupt of all his rights and title to property, &c., and providing for the appointment of assignees, declares "the assignee so appointed shall be vested with all the rights, titles, powers, and authorities to sell, manage and dispose of the same, and to sue for, and defend the same, subject to the orders and directions of the court, as fully to all intents and purposes, as if the same were vested in or might be exercised by such bankrupt, before or at the time of his bankruptcy declared as aforesaid," &c. This section, we think, very clearly, was designed to clothe the assignee with all the right, title, and power over the assets of the bankrupt, of whatever kind or nature they might be, that the bankrupt himself possessed before his bankruptcy, but no more. In all cases, where the bankrupt could sue, the assignee can sue; where the bankrupt could convey the legal title, the assignee can; but we are entirely satisfied that it was not the design or intention of the act to enable the assignee to convey a legal title, where by the rules of law, the bankrupt himself could not. The act merely strips the bankrupt of all his rights to property, and gives them to his assignee, in the same plight and condition that the bankrupt possessed them. The assignee may then sue for them, or sell the effects, as the bankrupt could, but his act of sale will give the purchaser no other title, than a sale by the bankrupt before his bankruptcy would confer. The assignee stands in the shoes or stead of the bankrupt, and may lawfully do every act that the bankrupt could, but he can do no more. If the bankrupt could not give a legal title by his sale, the assignee cannot. This we think is the fair and reasonable construction of the third section of the act. Whether Congress could enable an assignee in bankruptcy to sell a chose in action, and thereby to give his vendee, or purchaser, the legal title, is a question, in our opinion, not presented in this case; for we do not think that such was the design or intention of the act. But it was merely intended to give him the same powers that the bankrupt had, and to attach to his acts the same legal consequences.

In the case of Birch v. Tillotson, 16 Ala. 387, the question here presented was not decided by the court, but was expressly waived, because we did not consider that it was necessary to decide it. We are clearly of the opinion that the court erred, and the judgment must be reversed, and the cause remanded.